## ZIPKIN et al. v. INVESTORS SYNDICATE.

### No. 8960.

United States Court of Appeals
District of Columbia.

Argued Nov. 13, 1945.

Decided Dec. 24, 1945.

Mr. Mark P. Friedlander, of Washington, D. C., with whom Mr. Samuel Gordon, of Washington, D. C., was on the brief, for appellants.

Mr. Joseph C. McGarraghy, of Washington, D. C., with whom Mr. Clarence R. Ahalt, of Washington, D. C., was on the brief, for appellee.

Before GRONER, Chief Justice, and CLARK and PRETTYMAN, Associate Justices.

## PRETTYMAN, Associate Justice.

Appellee Investors Syndicate was plaintiff in an action for damages for breach of two bonds. Appellants were sureties on the bonds. Trial was had before a jury. The verdict and judgment were for the plaintiff. Defendants appealed.

The Harland Corporation, a building concern, entered upon the construction of certain houses. Investors Syndicate engaged to lend The Harland Corporation monies, at interest, for use in the project. The Harland Corporation gave to Investors Syndicate first deeds of trust on the real estate to secure the loans. It also executed two bonds in favor of Investors Syndicate. Appellants were sureties on these bonds. The obligations of the bonds were identical and as follows:

"Now, Therefore, the condition of this obligation is such, that if the said above bounden, The Harland Corporation, as Principal, and Harry A. Harris, David B. Smith, Cecelia Smith, Max Zipkin, and Eva Zipkin, jointly and severally, as Sureties, or either or any of them, their respective heirs, executors, administrators, successors or assigns, shall within five (5) days after notice thereof, at their cost and expense cause the said land and premises and improvements to be forever released and discharged from any and all and every lien and claim which may be presented or filed, at any time within six (6) months after the final completion of said improvements, by any person or persons or body corporate, for any work, labor, or service done, or material or any other thing supplied or furnished in connection with the construction or erection of said dwellings, and further shall complete the same in accordance with said plans and specifications, (or as the same may be modified in the manner aforesaid), within four (4) months after the date hereof, then this obligation to be null and void, otherwise to remain in full force and virtue in law."

The first bond was dated August 4, 1937, and the second September 2, 1937. Four months from the first date was December 4, 1937, and four months from the second date was January 2, 1938. The houses were not completed by January 2, 1938. Beginning March 16, 1938, and from time to time until June 6, 1938, mechanics' liens were filed against the houses. On May 19, 1938, upon petition of creditors, a receiver for the property of The Harland Corporation was appointed by the Circuit Court of the County of Arlington, Virginia, where the property was located. Notice of the liens was given appellants on May 27, 1938. The liens were not removed within five days thereafter. Under order of the court the receiver secured bids for the completion of the houses, completed them and sold them. Investors Syndicate claimed that it suffered a loss by reason of the breach of the bonds and, for that reason, filed its complaint against appellants as sureties on the bonds.

The court instructed the jury that if it found that the plaintiff had suffered a loss of any part of the principal of, or interest on, the loans it made to The Harland Corporation, and that such loss, if any, was caused directly by the failure to complete the dwellings within four months from September 2, 1937, they should award the plaintiff as damages the amount of such loss, if any; and, similarly, that if they found that the plaintiff had suffered a loss of principal or interest as the direct result of the defendants' failure to discharge the liens within five days after notice, they would award plaintiff as damages the amount of such loss. The court made

these instructions clear by repeating them, at one point saying:

"When I said directly caused, I meant directly caused, and I assume that you understood that. If you conclude that any part of the plaintiff's alleged loss was directly caused by some other thing or event, then the loss could not have been directly caused by a breach of the bond in these two particulars, and in the latter event the plaintiff may not recover from the defendant for any loss except those, if any, which were directly caused by a breach of the bond."

The court withdrew from the jury the question as to whether the receivership proceedings prevented the defendants from completing the construction of the houses. It declined to instruct the jury concerning a waiver alleged by defendants. It also declined to instruct the jury that as a matter of law, the interest on the loans ceased at the date of the sale of the houses by the receiver, or that, unless a jury found that the first trusts had been released by deeds of release, the verdict must be for the defendants.

The gist of the action was the loss caused by the delay in the completion of the houses and in the removal of the liens. The bonds recited that Investors Syndicate was apprehensive that delay in completion might occur and that liens might be filed. Delay, either of completion or of removal of the liens, was an obvious potential cause of loss to the lender of the money. Protection against such loss was the objective of the bonds. Appellants do not deny that the houses were not completed by December 4, 1937, or January 2, 1938, the dates which were, respectively, four months from the dates of the bonds; or that the mechanics' liens were not removed within five days after the notice of May 27, 1938. Their defenses are by way of denial of liability for the breach.

■■■ Appellants contend that Investors Syndicate had valid first trusts upon the property and, therefore, could suffer no damage from the breach of the bonds. Investors Syndicate presented the testimony of the receiver and of its attorney in the transaction, who said that the property was sold by the receiver by order of the court free and clear of any lien whatsoever. It fortified this testimony with references to a court order directing the receiver to complete the houses with money secured by a first lien upon them. Appel-

lants presented no contrary evidence, but rely upon the failure of appellee to prove that the deeds of trust have been released by formal deed of release or to present any order of the Virginia court directing the sales. The receiver's testimony as to the nature of the sales made by him was competent, and there was no contrary evidence. Appellee explained the absence of a formal deed of release by presenting the opinion of counsel that such a deed was unnecessary in view of the order of the Virginia court. The trial court clearly instructed the jury that they must determine whether there was a loss, and such evidence as the parties cared to present concerning the first trusts was before the jury as bearing upon the fact of loss. In the light of the evidence presented by appellee, it was incumbent upon appellants to present such contrary evidence as there might be, and thereafter the matter was for the jury.

■■■ Appellants contend that Investors Syndicate waived the breach as to the completion of the houses by continuing to make payments to the contractor after the expiration of the specified four-months periods. The court held that mere payment to the contractor did not constitute waiver and that, therefore, there was no evidence of waiver. We agree with the trial court that where a bond unequivocally requires completion of a project within a specified period, mere payment thereafter to the contractor, with nothing more, could not constitute a waiver of a breach of the bonds. If it were shown that such payments increased rather than reduced the loss, they might be material upon the question of damages. It was not so shown in this case. In their brief in this court, appellants couple their contentions on this point with an assertion that notice of failure to complete was required by the terms of the bonds. We find no such requirement in the bonds. The notice was clearly required in respect to liens only.

■■■ Appellants contend that the sureties were prevented by the receivership proceedings from removing the liens against the houses. We find nothing in the record to support this contention. Appellants say that the liens were not valid. But this was not determined for many months, until the Court of Appeals of Virginia had passed upon the matter. Appellants' obligation under the bonds was an unequivocal obligation to release, at their cost and expense, the liens, or to cause

their release, within five days of notice. Appellee's claim, as we have pointed out, is for loss caused by delay in removing the liens. The clear purpose and provision of the bonds was to place upon their principal and sureties the burden, and loss, if any, of liens, and no exception was made of invalid liens. Invalid liens were as objectionable to the purpose of the bonds as valid ones. Appellants also say that they were prevented from completing the houses by the action of the receiver in requiring competitive bids. They say that they tendered performance. The record shows that the appellant Zipkin went to the receiver and offered to complete the houses, but there is a dispute as to whether the offer was or was not for a price. The receiver testified that Zipkin never offered to complete the houses without cost to the receiver. Zipkin says that he offered to complete them at his cost, but it is not clear what he meant by that expression.

■ In any event, the receiver was not appointed until May 19, 1938, and the four-months period within which the sureties undertook to complete the houses had long since expired. Thus, the receivership action could not have precluded completion of the houses within the period required by the bonds. Appellants' tender to complete, coming more than four months after the permitted four months had expired and after a receiver had been appointed, was not a legal defense to liability for loss caused by the delay. The only possible effect of the tender, if one was made, would have been in mitigation of damages, and appellants did not attempt to show that they would have completed the houses quicker or at less expense than the receiver did.

■ Appellants contend that Investors Syndicate either waived the breach or prevented performance by the sureties by making premature payments to the contractor, so that the money remaining due under the original loan agreement was not sufficient to cover the costs of completion at the time the sureties undertook to complete. There is nothing in the bonds or in the contract of loan specifying the time when the money was to be advanced by the lender. So far as these contracts were concerned, the entire amount might have been advanced immediately. The schedule of payments which is referred to by the appellants is contained in a letter addressed to The Harland Corporation by Shannon & Luchs, a real estate concern, acting either as loan agent or as loan broker, advising as to how advances would be made. At most it was informatory and not a binding limitation. Moreover, the letter was dated August 9, 1937, which was after the first bond had been signed. It was no part of the contracts, and certainly no part of the bonds. In the cases cited by appellants, schedules of payments were incorporated in the contracts.

■ Appellants claim as material the question whether the houses were or were not completed according to the original specifications. We think the question would be material only if the variations from the specifications had been the cause of a longer delay in completion than actually occurred. If appellants had thought that the alleged variations were a cause of delay, they should have presented evidence to that effect. They presented none.

■ Appellants contend that, as a matter of law, Investors Syndicate could not recover damages represented by interest on the unpaid loans between the date when the property was sold by the receiver and the date when Investors Syndicate was repaid by the receiver. The court instructed the jury upon this point, and thereafter repeated the instruction at the request of the jury, telling them that they must determine whether the loss of this interest resulted directly from the breach of the bonds, that if it did, they might find that it was a damage flowing from the breach, but that if the loss of this interest, if interest was lost, was directly caused by another factor or cause not related to or springing directly from the breach of the bonds, they should not allow the plaintiff damages for any loss of such interest. Appellants cite Prudence Co. v. Fidelity & Deposit Co., 297 U.S. 198, 56 S.Ct. 387, 80 L.Ed. 581, but in that case the court held that upon suit for breach of a completion bond, the lender should be placed in the same position it would have occupied if the building had been completed on time, and further that interest on the investment is a proper consideration in determining the extent of the loss, if any. Appellants also cite Meister v. J. Meister, Inc., 103 N.J. Eq. 78, 142 A. 312; Hoover Steel Ball Co. v. Schaefer Ball Bearing Co., 90 N.J.Eq. 515, 107 A. 425, and Roos v. Fairy Silk Mills, 342 Pa. 81, 19 A.2d 137, 134 A.L.R. 844. These cases deal with interest payable to a mortgagee after foreclosure and

sale of the mortgaged property. In the case at bar, the claim to interest was made by the plaintiff as an element of damages from a breach of bonds, the purpose and effect of which were to protect the lender against loss by reason of delays. We think that the court correctly submitted the question to the jury.

Affirmed.