**UNITED STATES of America**

v.

**Andre HENRY, Appellant.**

No. 08–3888.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Nov. 6, 2009.

Filed: Jan. 7, 2010.

Bernadette A. McKeon, Esq., Office of United States Attorney, Philadelphia, PA, for United States of America.

Christopher D. Warren, Esq., Philadelphia, PA, for Appellant.

BEFORE: SCIRICA, Chief Judge, JORDAN and COWEN, Circuit Judges.

## OPINION

COWEN, Circuit Judge.

Andre Henry appeals from the judgment of conviction and sentence entered by the United States District Court for the Eastern District of Pennsylvania. We will affirm.

## I.

Henry was convicted and sentenced in Pennsylvania state court for robbery at gunpoint. On April 25, 2003, he was released on parole. He signed the standard Pennsylvania form giving parole agents consent to search his person, property, and residence without a warrant.

Henry was subsequently arrested by state parole agents on October 21, 2003. On January 24, 2006, a federal grand jury returned a twenty-eight-count indictment against him and six other defendants. The grand jury subsequently returned a superseding indictment with the same number of counts on October 24, 2006. He was charged with various firearms offenses, Hobbs Act robbery, armed bank robbery, carjacking, and solicitation to commit murder. Henry filed numerous counseled and pro se pretrial motions, and specifically

sought to suppress evidence obtained in connection with the search of his automobile and his residence on October 21, 2003.

After an evidentiary hearing, the District Court denied the suppression motions on February 2, 2007. It provided its reasoning for doing so in a thorough memorandum. Refraining from deciding the question of whether reasonable suspicion was even required given his written consent to warrant-less searches as a condition of parole, the District Court concluded that there was reasonable suspicion to conduct the two searches at issue in this case. It further found that Henry's suppression testimony was properly stricken because he had invoked his Fifth Amendment rights on cross-examination. The District Court finally noted that "there is uncontroverted testimony that defendant consented to the search of his vehicle immediately prior to the October 21, 2003 search of his vehicle, and that defendant's mother consented to the search of her house immediately prior to the October 21, 2003 search of defendant's residence." (82a (citing Jan. 29, 2007 Hearing Transcript at 55, 106).)

On February 22, 2007, the jury found Henry guilty on twenty-seven counts (a single count (possession of body armor) was dismissed by the government). The District Court subsequently sentenced him to a total term of imprisonment of 982 months. This appeal followed.

## II.

We agree with the District Court that the parole agents clearly possessed reasonable suspicion to conduct the searches, and we therefore need not decide whether the

Supreme Court's decision in *Samson v. California,* 547 U.S. 843, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006), otherwise permits suspicion-less searches in the current circumstances.[1]

The existence of reasonable suspicion is ascertained from the totality of the circumstances. *See, e.g., United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Id.* (quotation omitted). "Although an officer's reliance on a mere 'hunch' is insufficient [to satisfy the reasonable suspicion requirement], the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Id.* at 274, 122 S.Ct. 744 (citations omitted); *see also, e.g., United States v. Baker,* 221 F.3d 438, 444 (3d Cir.2000) ("The decision to search must be based on 'specific facts,' but the officer need not possess probable cause." (quotation omitted)).

■ Initially, the District Court properly determined that the parole agents possessed reasonable suspicion to search Henry's vehicle on October 21, 2003. Special Agent Gerald Gallagher of the Bureau of Alcohol, Tobacco, and Firearms ("ATF") learned on October 7, 2003 that Henry was involved in the August 2003 straw purchases of several "long guns" in Montgomery County. Agent Gallagher then spoke with Donna Henry, who supervised the

---

1. The District Court possessed subject matter jurisdiction over this criminal matter pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291. We review a district court's findings of fact in connection with a suppression motion under a clear error standard of review. *See, e.g., Unit-*

*ed States v. Williams,* 413 F.3d 347, 351 (3d Cir.2005); *United States v. Perez,* 280 F.3d 318, 336 (3d Cir.2002). In turn, the district court's application of the law to these facts is subject to plenary review. *See, e.g. Perez,* 280 F.3d at 336.

parole officer assigned to Henry, on October 20, 2003. He told her about the Montgomery County straw purchases and his desire to speak with Henry. On the next day, Henry arrived at the parole office without a scheduled appointment and asked for the ankle monitor to be removed. Based on the information from Agent Gallagher, Henry was detained. He admitted that he traveled outside of Philadelphia County. After purportedly obtaining his consent, his vehicle was searched. The parole agents found, inter alia, a turnpike ticket, which indicated travel outside Philadelphia County in violation of the conditions of parole, a bumper sticker for the gun shop mentioned by Agent Gallagher, and three metal pipes (eventually determined not to contain explosives). In the end, the information regarding possible parole violations, combined with Supervisor Henry's knowledge of Henry's own prior criminal history, the circumstances of his unexpected visit to the parole office asking for the removal of his ankle monitor, and her own experience as a parole agent, clearly furnished reasonable suspicion to believe that Henry's car would contain evidence of parole violations.

Henry acknowledges that the parole agents had "reason to suspect that appellant had violated the conditions of his release (by participating in the straw purchases and leaving the County)." (Appellant's Br. at 19.) However, he claims that "what is missing here are the 'specific facts' that would have permitted a reasonable inference that evidence of those violations (or some other violation) would be found inside the vehicle." (*Id.*) But, contrary to his characterizations, Supervisor Henry never actually conceded this point in her testimony. She did admit that Agent Gallagher never specifically told her that she might find weapons in Henry's vehicle or on his person and that she likewise did not have particular information that he had

weapons on his person, in his vehicle, or in his residence. She further admitted that she "didn't enter the car to look for a turnpike ticket." (92a.) On the other hand, Supervisor Henry testified that, in her experience, parolees, particularly those with convictions for violent offenses involving weapons, often have weapons in their vehicles. While Henry emphasizes her passing statement that she was looking for "[f]urther violations of any kind," this assertion came in response to a cross-examination question that inaccurately claimed that Supervisor Henry had previously testified that she "had no reason to believe there were weapons in there." (92a–93a.)

We likewise must reject Henry's argument that the present circumstances are analogous to the circumstances addressed by this Court in *United States v. Baker*, 221 F.3d 438 (3d Cir.2000). In *Baker*, the defendant was arrested by parole agents because he violated a parole condition against driving without a license. *Id.* at 440. The agents then searched the trunk of his car, finding drug paraphernalia. *Id.* at 440–41. We held that they lacked reasonable suspicion to search the trunk because the parole violation of driving without a license had no apparent relation to anything that could be found in the trunk. *Id.* at 445 ("[N]either Baker's violation of his parole by driving a vehicle nor his failure to document that he owned the vehicle can give rise to a reasonable suspicion that he was committing other, unspecified, unrelated parole violations—the evidence of which might be found in the trunk." (citation omitted)). On the other hand, the parole agents here had a reasonable basis to search Henry's vehicle, especially in light of the specific information regarding the straw purchases across county lines.

■ Following the search of the car and questioning by Agent Gallagher (after *Mi-*

*randa* warnings were given and he signed a waiver), parole agents searched Henry's residence with the permission of his own mother. They seized a number of items, including the weapons acquired in the straw purchases. Henry's challenge to this search largely rests on the notion that this second search (as well as his statements to Agent Gallagher at the parole office) constituted the "inadmissible fruit" of the constitutionally deficient search of his vehicle. (Appellant's Br. at 17.) We, however, have already concluded that this initial search was supported by reasonable suspicion. Likewise, his assertion that "there were no 'specific facts' which could have possibly given rise to a reasonable suspicion that firearms or evidence of some other unspecified violation would be found" must be rejected given Agent Gallagher's own testimony that Henry admitted to him that the guns had been stored at the house at some point. (Appel-

lant's Br. at 20.) Agent Gallagher further told the District Court that, in his experience, suspects tend to keep guns in their residences, that such guns are often recovered some time after the authorities receive information about their location, and that long guns especially tend to be kept longer than handguns. Supervisor Henry confirmed this account by testifying that parolees who had been convicted of weapons offenses often keep firearms at their homes. Even setting aside the fact that Henry's mother consented to the search itself, the District Court properly found that the search of the residence was supported by reasonable suspicion.[2]

### III.

For the foregoing reasons, we will affirm the judgment of the District Court.

---

2. The government raises a number of additional grounds for why we should uphold the District Court's ruling denying Henry's motions to suppress. But, given the clear existence of reasonable suspicion, we need not address these additional points to resolve this appeal.