NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 14-1344
_____

UNITED STATES OF AMERICA

v.

JEROME MARIO BRITTON,
a/k/a Jerome Mario Britton, Jr.

Jerome Britton,
                              Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal No. 1-13-cr-00014-001)
District Judge:  Honorable William W. Caldwell

Submitted Under Third Circuit LAR 34.1(a)
October 20, 2014

BEFORE:  AMBRO, FUENTES, and NYGAARD, *Circuit Judges*

(Filed: April 8, 2015)

_____

OPINION[*]

_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

NYGAARD, *Circuit Judge.*

Jerome Britton appeals his conviction on one count of felon in possession of a firearm, contending that it was based on inadmissible evidence. He also says that the jury reached inconsistent verdicts resulting in insufficient evidence to convict him. We will affirm the judgment of conviction and sentence.

Britton was on parole from a 2002 conviction on a drug charge (35 Pa. C.S. § 780-113(a)(30)) and a 2006 conviction for controlled substance contraband to confined persons prohibited (18 Pa. C.S. § 5123a). Parole Agent Geedey became aware that Britton's brother—also on parole—had been killed. Geedey subsequently was told of a threat to Britton's life. Agent Hans, Geedey's supervisor, learned from police that a Facebook post from Britton, and a family member's comment, suggested that Britton was going to seek revenge. After unsuccessfully attempting to reach Britton by phone, Geedey and Hans, accompanied by other agents, went to Britton's registered address. A woman answered the door and said that Britton was not home, but agents at the rear of the house could see a man inside. Britton was then observed walking out into the back yard to bring a Pit Bull dog inside the house. Britton eventually came to the front door, but initially was uncooperative with requests to talk and to be handcuffed. After some time he consented to be handcuffed and the agents escorted him inside the house.

After sitting Britton on a sofa in the house they saw an assault rifle bullet on a television stand in the living room, and then saw crack cocaine and drug paraphernalia in the kitchen. After seeing the crack cocaine, agents contacted the Harrisburg, PA police,

2

who obtained a search warrant and found two guns along with more narcotics and drug paraphernalia. An expert later testified that the rifle found in the house had Britton's fingerprint on it.

Britton was charged with two counts of felon in possession of a firearm (18 U.S.C. §922(g)(1)) relating to a pistol and an assault rifle found in his house. He was also charged with possession of a stolen firearm (18 U.S.C. §§ 922(j)), relating to the pistol, and with possession with intent to distribute crack cocaine (21 U.S.C. §841(a)(1)).

Britton moved to suppress evidence, arguing that the agents did not have reasonable suspicion to search his house and that he did not consent to their entry into the house. The District Court did credit Agent Geedey's testimony that Britton consented to their entry into his home, and it found Britton's contrary testimony incredible. But the Court explicitly did not base its ruling on this finding. Rather, it denied the motion after concluding that the agents entered the house on the reasonable suspicion that Britton had committed a parole violation or crime. We agree.

When the parole agents entered Britton's house, they did so on information that Britton's brother had been killed, that Britton had been threatened, and that he made threats himself. The District Court acknowledged Agent Hans' ten years of experience and noted that he drew on this to have concern that a parolee who is being threatened with violent crimes is more likely to obtain firearms to protect himself. Moreover, when agents arrived at the house, the mother of Britton's child reported that Britton was not home, which was contradicted by the direct observations of other agents on the scene. Also, Britton was initially uncooperative with the agents. The District Court properly

3

concluded that the totality of the circumstances gave parole agents reasonable suspicion that Britton had committed a parole violation or a crime, thus justifying a parole search. *United States v. Baker*, 221 F.3d 438, 443-44 (3d Cir. 2000), <u>as amended</u> (Sept. 21, 2000).  The subsequent search of the house conducted by Harrisburg police was pursuant to a warrant grounded in the parole search.  For all of these reasons, the District Court did not abuse its discretion by denying Britton's motion to suppress evidence of the guns.

As for the verdict, an expert testified that the assault rifle, found in the house registered as Britton's address, had Britton's fingerprint on it.  With all of the evidence discussed above, we have no difficulty concluding that, examined in a light favorable to the prosecution, a reasonable trier of fact could find guilt beyond a reasonable doubt on the felon in possession count relating to the assault rifle.  However, there was no fingerprint evidence linking the pistol to Britton, and this was enough to ground different verdicts on counts relating to the two guns.  We are not persuaded by Britton's argument that the jury reached inconsistent verdicts here.

For all of these reasons, we will affirm the judgment of conviction and sentence.