

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-7-2006

# Byrne v. Calastro

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2153

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Byrne v. Calastro" (2006). *2006 Decisions*. Paper 238.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/238

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 05-2153 and 06-3129

PATRICK BYRNE, as Trustee of the Laborers' International
Union of North America Local 734 Pension Fund
and Laborers' International Union of North America
Local 734 Welfare and Educational Fund;
PAUL DRAZEN, as Trustee of the Laborer' International
Union of North America Local 734 Pension Fund
and Laborers' International Union of North America
Local 734 Welfare and Educational Fund

v.

LOUIS CALASTRO; SALVATORE SALERNO;
MICHAEL ROSADO; JOSEPH GAMBARDELLA; PETER RIZZO;
JOHN FRITZSCH; AUGUST VERGALITO; RHODA VERGALITO;
JAMIE DOLAN; EDWARD DOLAN; BERNARD DWYER;
ISAAC BAROCUS, a/k/a IRVING BAROCUS; FRANK PERNICE;
CHARLES J. PURCELL; CJP ACCOUNTING, INC.;
PURCELL ORGANIZATION, INC.; DENNIS J. JASTRZEBSKI, DDS;
JOHN DOES 1-26; ABC CORPORATION 1-26;
DANIEL CASTIGLIONE; CHRISTOPHER SABATELLA

Louis Calastro; Salvatore Salerno;
Michael Rosado; Joseph Gambardella; Peter Rizzo,
Appellants Case No: 05-2153

PATRICK BYRNE, as Trustee of the Laborers' International
Union of North America Local 734 Pension Fund and Laborers'
International Union of North America Local 734 Welfare and
Educational Fund; PAUL DRAZEN, as Trustee of the Laborer'
International Union of North America Local 734 Pension Fund
and Laborers' International Union of North America Local 734
Welfare and Educational Fund
v.

LOUIS CALASTRO; SALVATORE SALERNO; MICHAEL ROSADO;
JOSEPH GAMBARDELLA; PETER RIZZO; JOHN FRITZSCH;
AUGUST VERGALITO; RHODA VERGALITO; JAMIE DOLAN;
EDWARD DOLAN; BERNARD DWYER; ISAAC BAROCUS a/k/a Irving Barocus;
FRANK PERNICE; CHARLES J. PURCELL; CJP ACCOUNTING INC;
PURCELL ORGANAZATION, INC.; JOHN DOES 1-26; ABC CORPORATION 1-26;
DENNIS J. JASTRZEBSKI, DDS; ABC CORP, 1-26; DANIEL CASTIGLIONE;
CHRISTOPHER SABATELLA; PETER RIZZO; ULICO CASULTY COMPANY;
STATE NATIONAL INSURANCE COMPANY; TERENCE M. O'SULLIVAN,
Individually and as General President of LIUNA; RAYMOND POCINO

Louis Calastro; Michael Rosado,
Joseph Gambardella; Peter Rizzo,
Appellants Case No:  06-3129

---

Appeals from the United States District Court
for the District of New Jersey
(D.C. Civil No.  05-cv-00068)
District Judge:  Honorable Dennis M.  Cavanaugh

---

Submitted Under Third Circuit LAR 34.1(a)
September 26, 2006

Before:  RENDELL, GARTH and ROTH, <u>Circuit</u> <u>Judges</u>.

(Filed: November 7, 2006)

---

OPINION OF THE COURT

---

RENDELL, *Circuit Judge.*

Appellees Patrick Byrne and Paul Drazen, as trustees of the Laborers' International

Union of North America Local 734 Pension Fund and Welfare and Educational Fund,

filed this action against appellants Louis Calastro, Salvatore Salerno, and Peter Rizzo for

2

breach of fiduciary duty, conversion of assets, fraud, breaches of employment agreements, and violations of good faith and fair dealing, all arising under ERISA, 29 U.S.C. §§ 1104, 1106, and 1109, and New Jersey common law.[1]  Appellants held fiduciary positions in two union funds (the "Funds") governed by ERISA, 29 U.S.C. § 1002.  The District Court entered a preliminary injunction removing Calastro and Salerno as employer-trustees and Rizzo as fund administrator of the Funds.  Calastro, Salerno, and Rizzo have appealed the entry of the preliminary injunction.

The District Court had jurisdiction over the action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, and 28 U.S.C. § 1331.  We have jurisdiction to review the interlocutory order of the District Court pursuant to 28 U.S.C. § 1292(a)(1).  We review the District Court's denial of a request for a preliminary injunction to determine "whether there has been an abuse of discretion, a clear error of law, or a clear mistake in the facts."  *McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.*, 24 F.3d 519, 532 (3d Cir. 1994) (citing *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 198 (3d Cir. 1990)).

## I.

In or about November 2003, counsel for the Union and, at the time, for the Funds, Albert Kroll, allegedly learned from an anonymous law enforcement officer of no-show jobs and inflated employee salaries at the Funds.  He shared this information with Patrick

---

[1]  The complaint alleged claims against a number of other defendants, but the preliminary injunction involved only these three defendants, and only they have appealed.

Byrne, the deputy supervisor of the Union. In July or August 2004, Byrne retained the

accounting firm of Schultheis & Panettieri, LLP to conduct an operational audit of the

Funds, but had difficulty obtaining documents from the Funds for the audit. Finally the

firm prepared an on-site document review near the end of September 2004. The

preliminary results of the audit detailed several unnecessary or overpaid positions at the

Funds and an unnecessary satellite office.[2]

These preliminary results were not shared with any of appellants until November

12, 2004. On November 11, 2004, however, new counsel to the Funds, Angelo Bisceglie,

already had learned of these problems and had initiated action to correct them.

In October 2004, the General President of the Laborers' International Union of

North America informed the Union that an emergency trusteeship had been imposed on

Local 734 "because of various administrative problems within the Local's benefit funds."

---

[2] By the time of the preliminary injunction hearing, the following specific problems
had been identified:
- Edward Dwyer was paid $119,600 per year plus use of a company vehicle to administer a $25,000 scholarship fund (A730);
- Isaac Boracus was paid $123,000 annually for duplicative and unnecessary position involving only "coordinating paperwork in the [satellite] office" and "assisting Dwyer with scholarships" (A730);
- Bricktown, NJ satellite office contained non-functioning computers and the cost of maintaining the office could not be justified (A729-30);
- CJP Accounting Services, Inc. was paid $158,600 annually under a no-bid contract to perform routine bookkeeping services (A1178-84);
- Dr. Dennis Jastrzebski was paid $123,525 annually for six hours of work per week of in-house dental consulting under a no-bid contract (A1273-74);
- Jamie Dolan and Rhoda Vergalito were paid a combined salary of $126,240 for the year 2003 to answer phones at a little-used toll-free number, which worked out to an average of $1315 per call (A1272).

A86-87. In November and December 2004, an emergency trusteeship hearing was held.

At the conclusion of the hearing, Independent Hearing Officer ("IHO") Peter Vaira issued a Final Order and Memorandum, which found that there were a number of the unnecessary or overpaid positions or positions of power within the Unions and that many of them were held by persons related to or associated with a Mr. Auggie Vergalito, a man with suspected ties to organized crime.[3]  A104.  The IHO concluded that the "breach of duty on the part of the Union Trustees is so extensive that it is sufficient grounds for a trusteeship over the Local Union. . . .  At the very least, the union trustees abandoned their independence, and breached their fiduciary duty to the Funds."  A116.

Plaintiffs/appellees brought the instant action in January 2005, and moved for a preliminary injunction removing Calastro, Salerno, and Rizzo from their positions with the Funds.  The District Court issued an order for expedited discovery.  A192, A1201.  Appellants moved for a protective order staying their depositions in order to preserve their Fifth Amendment rights in a parallel criminal investigation being conducted into the same conduct at issue in the civil action.  The Magistrate Judge stayed appellants' depositions but otherwise ordered discovery to continue as usual.  A404.  Shortly thereafter, the Magistrate Judge granted the plaintiffs' motion to strike appellants' own affidavits.  A405-06.  Appellants also submitted affidavits prepared by counsel.  A449,

---

[3]  Relatives and close associates to Auggie Vergalito holding positions in the Union and with the Funds during the relevant time period were Rhoda Vergalito, Jamie Dolan, Edward Dolan, John Fritzsch, Edward Dwyer, Peter Rizzo, Issac Barocus, and Daniel Castiglione.  A104.

5

A1135, Gray Br. 7-8. In April 2005, the District Court held a preliminary injunction hearing and granted the plaintiffs' motion for the preliminary injunction removing the three appellants. A1297-1363; A8-18. The District Court also appointed a substitute employer trustee. A19.

## II.

While the District Court was able to consider "an overwhelming amount of documentary support for [plaintiffs'] allegations concerning excessive expenditures and salaries," it noted that "the record is almost completely devoid of any facts contradicting Plaintiffs' assertions." Dist. Ct. Op. (Letter) at 8-9, A14-15. The District Court noted that the appellants had proffered their own affidavits. However:

> Here, Defendants' raising of the issue of their Fifth Amendment privileges against self-incrimination has resulted in their version of the facts being stricken from the record before the Court. The Court thus bases its rulings on the undisputed facts presented by Plaintiffs' written submissions.

A11 n.2.

Appellants contend on appeal that they did not assert their Fifth Amendment rights. However, appellants themselves sought to stay discovery in the District Court pending the completion of the criminal investigation, expressly citing their Fifth Amendment rights. Furthermore, they presented this argument in the preliminary injunction hearing, and the District Court pointed out that although the Magistrate Judge had granted the stay of appellants' depositions, appellants could not claim they did not know of the impending preliminary injunction hearing. A1322-23. Appellants did not

6

ask the District Court for more time to complete discovery. A1329. Moreover, the District Court stated that no adverse inference was being drawn from appellants' exercise of their Fifth Amendment rights. A1324.

Appellants do not contest the Magistrate Judge's ruling striking their affidavits. However, they complain that the District Court should have considered affidavits submitted by their attorneys Bisceglie and Grossman, as well as the letter brief from Bisceglie to the District Court submitted previously in opposition to the TRO.

At the preliminary injunction hearing on April 4, 2005, appellees argued that the attorney certifications submitted by defendants contained argument in violation of D.N.J. Civ. R. 7.2. Although it appears that no ruling was expressly rendered on this argument, the District Court did state that much of the Bisceglie affidavit contained argument and stated that it might violate the local rule. A1314, A1330. Moreover, the District Court stated in the preliminary injunction hearing that no evidence had been submitted by appellants and based its ruling in its written opinion on the "undisputed facts presented by Plaintiffs' written submissions." A11 n.2, A1316. On the record, therefore, it appears that the District Court did not place much weight on the attorney affidavits.

Apparently conceding that the attorneys' affidavits were at least partially improper, appellants argue that the District Court should have disregarded the challenged portions and considered what remained, as is provided in the local rule, D.N.J. Civ. R. 7.2. However, appellants do not identify which portions of the affidavits could be properly considered. Furthermore, even assuming some information in the attorney

7

affidavits could have been properly considered but was not, appellants do not identify, and we do not find, facts that would have effectively countered the evidence provided by appellees in support of their motion for the preliminary injunction.

Although they argue that the District Court prematurely granted the preliminary injunction, appellants do not argue they were prevented from submitting exculpatory evidence, nor did they seek additional discovery. Presumably they would have been in possession of any existing documentation demonstrating their efforts to ensure appropriate expenditures by the Funds in the areas in question. Nevertheless, aside from the attorney affidavits, appellants submitted "virtually nothing . . ., or very little, . . . that would argue otherwise on their behalf." Tr. of Prelim. Injunct. Hearing, A1306. We conclude that the preliminary injunction was not entered prematurely.

### III.

We turn to whether the preliminary injunction was properly granted. The District Court should consider four factors in evaluating a party's motion for preliminary injunction:

> (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest.

*Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 158 (3d Cir. 1999).

### A. Reasonable Probability of Success on the Merits.

Appellants urge that fiduciaries should be removed only in limited circumstances,

8

and that the District Court's ruling was pre-mature, and should have only been made after further discovery and trial. We disagree as to the latter point and, further, conclude that the facts here fall within the circumstances likely to warrant removal of the fiduciaries.

ERISA fiduciaries are required to discharge their duties "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A), *updated* PL 109-280, 2006 HR 4 (August 17, 2006). They are held to an objective standard of care. 29 U.S.C. § 1104(a)(1)(B). An ERISA fiduciary who breaches any of his responsibilities, obligations, or duties is subject to equitable or remedial relief, including removal, in addition to personal liability. 29 U.S.C. § 1109. A participant, beneficiary, or other fiduciary may bring a civil action for an injunction or other equitable relief for violations or enforcement of ERISA. 29 U.S.C. § 1132.

Appellants do not deny that there were excessive expenditures made by the Funds. *See, e.g.,* Appellants' Reply Br. at 8. Indeed, when these excessive expenditures were brought to light, the trustees quickly implemented changes on the advice of their attorney. Appellants contend, however, that a decision by the Court of Appeals for the Second Circuit in *Katsaros v. Cody*, 744 F.2d 270, 281 (2d Cir. 1984), indicates that removal of fund trustees is appropriate under ERISA only "when they have engaged in 'repeated or substantial violations of their responsibilities,'" (internal citation omitted).

Appellants' arguments under *Katsaros* appear to be: (1) that there was no

9

evidence that they knew of the excessive expenditures; and (2) that because they were eliminated prior to appellees' filing for the preliminary injunction, there was no evidence of any ongoing breaches of fiduciary responsibilities.

However, as the District Court pointed out, ERISA does not require a showing of bad faith. Dist. Ct. Op. at 8, A14. ERISA fiduciaries are held to an objective standard of care. 29 U.S.C. 1104(a)(1)(B). Accordingly, it seems it was within the District Court's discretion to find that the violation of duty was substantial, as the trustees permitted the Funds to spend hundreds of thousands of dollars in return for little or no benefit, and there clearly were several instances in which they did not act responsibly. Thus, it was not an abuse of discretion or clear error as to the facts, or an error of law, for the District Court to find the plaintiffs had a reasonable probability of success on the merits.

**B.    Irreparable harm.**

The District Court stated that because defendants could not take part in civil discovery in this case:

> a number of serious questions about possible financial misconduct go unanswered, undermining the confidence of Local 734 members in the fiduciaries who are supposed to protect their interests. As such, in light of the grave allegations at issue here and the negative impact on the reputation of the Funds in the eyes of plan participants and beneficiaries, the Court finds that Plaintiffs have made an adequate showing that they will be irreparably harmed.

A16.

In essence, appellants argue that there was no evidence that the harms alleged still existed at the time the preliminary injunction was entered and that legal damages would

10

have been sufficient to remedy any remaining alleged wrongs.  Moreover, they argue, the District Court's finding of irreparable harm on the Funds' reputation and image was without evidentiary foundation.

Reputation and image in the context of irreparable harm were discussed at the preliminary injunction hearing.  A1321.  At least one other Court of Appeals and several district courts have found these harms sufficient for preliminary injunction purposes.  *See, e.g., Int'l Brotherhood of Teamsters v. Local Union No. 810*, 19 F.3d 786, 794 (2d Cir. 1994).  The Court of Appeals for the Second Circuit found in one case that the nature of the "financial malpractice and undemocratic procedures severely test the allegiance of union members to their chosen leaders . . . a particularly serious matter in light of the union's history of corruption and its current efforts to establish confidence." *Id.* Similarly, the evidence here demonstrates financial irresponsibility, at the very least.  The allegations go beyond irresponsibility, however.  Appellants are accused of wasting assets, favoritism and of having ties to organized crime.  Because of the pending criminal investigation, discovery in this matter cannot be fully developed.  In light of the serious questions which will likely surround appellants' performance of their fiduciary duties for some time, we cannot say that the District Court's decision on this prong is an abuse of discretion or clear mistake.

###   C.    Balance of Hardships and Public Interest

Appellants argue that the balance of hardships should have tipped in their favor: Rizzo has lost his job and his livelihood; Calastro can no longer oversee administration of

11

the Funds of which his own employees are beneficiaries; and Calastro and Salerno's reputations will be tarnished. With regard to the public interest, appellants argue that the Funds were profitable under their supervision, a status which is jeopardized by the District Court's decision.

The District Court determined that any harm to defendants as a result of the loss of their livelihoods could be remedied by reinstatement and back pay. It appointed a substitute employer trustee to ensure continuing representation of employers' interests within the Funds' administration. There was no discussion of the trustees' reputations. The District Court found that ERISA evinced a congressional determination that employee benefit plans are in the national public interest and that there is a public interest in ensuring honest management of the Funds. Thus, in light of plaintiffs' demonstration of reasonable likelihood of success on the merits and irreparable harm to the Funds' participants and beneficiaries, the District Court determined that the public interest weighed more heavily in favor of granting the preliminary injunction. A17. Moreover, in the preliminary injunction hearing, the District Court noted that although the Funds had been profitable under the defendants' supervision, the argument could be made that absent the alleged breach of fiduciary duty, they would have been even more so. A1316. We will not disturb the District Court's reasoning in this regard.

Appellants also make an argument (Argument IV) that reversal is in order because the District Court should have considered that attorney Kroll, former counsel for the Funds and present counsel for appellees, had a conflict of interest and should have been

12

disqualified. This issue was later decided by the District Court's ruling denying appellants' disqualification motion, and was appealed to our Court, as Case Number 06-3129. We have recently consolidated the appeal in that case with this appeal. We have also received, and have considered, supplemental briefing from the parties as to why Case Number 06-3129 should not be dismissed for lack of jurisdiction based on lack of finality. *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368 (1981) (order refusing to disqualify attorney is not final order). Because the issue presented in Argument IV is more properly presented as an appeal from an order, and now has been so presented, we will not consider Argument IV in Case No. 05-2513. However, having considered the parties' submissions, we will dismiss the appeal in Case No. 06-3129 for lack of jurisdiction.

In sum, the District Court did not abuse its discretion, or make any clear error of fact, or legal error, in granting the preliminary injunction. Accordingly, we will affirm in Case No. 05-2513. We will also dismiss the appeal in Case No. 06-3129.