**UNITED STATES of America**

v.

**Andre HENRY.**

**Criminal Action No. 06–33–01.**

United States District Court,
E.D. Pennsylvania.

Feb. 2, 2007.

Michelle T. Rotella, U.S. Attorney's Office, Philadelphia, PA, for United States of America.

### MEMORANDUM

DuBOIS, District Judge.

## I. INTRODUCTION

Defendant, Andre Henry, is charged in a 28–count Superseding Indictment in connection with eight robberies of fast food restaurants, the purchase and possession of firearms and assault weapons, possession of body armor, two armed bank robberies, a conspiracy to commit a third armed bank robbery, a car jacking that involved shots fired at a police officer, and solicitation to commit murder of a federal grand jury witness. Currently before the Court are a *pro se* suppression motion and a counseled suppression motion, both of which pertain to searches of defendant's person, vehicle, and residence by state parole agents while defendant was on parole.

The Court held suppression hearings on November 7, 2006 and January, 29, 2007 to address the motions. The government's initial argument was that reasonable suspicion was not required to search defendant's person, property, and residence because, as a condition of parole, defendant consented in writing to such searches by state parole agents without a warrant. The Court need not reach this issue, however, because the Court concludes that there was reasonable suspicion to conduct the searches in question. For the reasons that follow, the Court holds that defendant's Fourth Amendment rights were not violated by the challenged searches and

seizures. Thus, defendant's suppression motions are denied.

## II. FACTS

On April 25, 2003, as a condition of release on parole from State Correctional Institute Somerset ("SCI Somerset"), defendant signed a form containing the following provision:

I expressly consent to the search of my person, property and residence, without a warrant by agents of the Pennsylvania Board of Probation and Parole. Any items, in possession of which constitutes a violation of the parole/reparole shall be subject to seizure, and may be used as evidence in the parole revocation process.

(Pa. Board of Probation and Parol Form PBPP–11, Parole No. 575B–S.) George Eckenroad, a State Parole Agent at SCI Somerset, read this provision to defendant. (Nov. 7, 2006 Hearing Transcript at 61–62.) Mr. Eckenroad asked defendant if he understood the conditions of parole, and explained to defendant that he should sign the form if he was in agreement. (*Id.* at 64.) Defendant signed the form in Mr. Eckenroad's presence. (*Id.* at 63.)

In September 2003, agents from the Bureau of Alcohol, Tobacco and Firearms ("ATF") conducted a compliance inspection of Abington Gun Sports in Willow Grove, Pennsylvania. (Gov't Resp. at 2.) Noting a purchase of multiple firearms by a person listed as Nakita McQuay, agents interviewed McQuay on October 7, 2003 regarding her August 2003 purchase of five assault-type firearms from Abington Gun Sports. (Gov't Resp. at 2; Def. Supp. Mem. at 4; Jan. 29, 2007 Hearing Transcript at 99.) McQuay acknowledged purchasing for defendant the following five weapons: one Mossberg 12–gauge shotgun, one Franchi 12–Gauge shotgun, one Romania AK–47 semi-assault weapon; one Marlin 30/30 rifle, and one Bushmaster .223 cali-

ber rifle. (Gov't Resp. at 2; Def. Supp. Mem. at 4; *See* Jan. 29, 2007 Hearing Transcript at 99.) McQuay explained that she filled out the paperwork and purchased the weapons because defendant was a convicted felon and was prohibited from purchasing them himself. (Gov't Resp. at 3; Jan. 29, 2007 Hearing Transcript at 100.) She also explained that defendant drove her to Abington Gun Shop in his vehicle. (Jan. 29, 2007 Hearing Transcript at 100.)

On October 20, 2003, ATF Special Agent Gerard Gallagher provided the information about defendant's purchase and possession of firearms to Donna Henry, Supervisor of the Pennsylvania State Parole office to which defendant's case was assigned. (Gov't Resp. at 3; Def. Supp. Mem. at 4–5; Jan. 29, 2007 Hearing Transcript at 100.) In doing so, Agent Gallagher informed Donna Henry that defendant had traveled to Abington Gun Shop, which Donna Henry knew was outside of Philadelphia County. (Jan. 29, 2007 Hearing Transcript at 53.) Traveling outside of Philadelphia County was a violation of defendant's parole conditions. (*Id.*)

On October 21, 2003, defendant unexpectedly arrived at the field parole office, requesting that a tracking bracelet be removed from his ankle. (Jan. 29, 2007 Hearing Transcript at 54, 101; *see* Gov't Resp. at 3.) Based on the information received from Agent Gallagher, parole agents detained defendant, searched defendant, and conducted a search of defendant's vehicle. (Jan. 29, 2007 Hearing Transcript at 54–55.) According to the uncontroverted testimony of Donna Henry, defendant identified his car and consented to its search. (*Id.* at 55.) Among other items, agents found a bumper sticker from Abington Guns, a Pennsylvania turnpike toll receipt, and what appeared to be three pipe bombs. (Gov't Mot. at 3; Def. Supp.

Mem. at 5; Jan. 29, 2007 Hearing Transcript at 56–57.) ATF Agent Gallagher was notified and responded to the parole office, as did numerous officers from the Philadelphia Fire Department and the Bomb Squad. Authorities did not find explosives in the pipes, but confiscated the pipes and end-caps. (Gov't Mot. at 3; Jan. 29, 2007 Hearing Transcript at 59.)

After advising defendant of his *Miranda* rights, Agent Gallagher interviewed defendant at the parole office. (Gov't Mot. at 3; Jan. 29, 2007 Hearing Transcript at 103.) Additionally, defendant twice signed and dated a form stating his *Miranda* rights. One signature is below a sentence stating "I have read this statement of my rights and it has been read to me, and I understand what my rights are." One signature is below a paragraph stating:

> I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or force of any kind has been used against me. I hereby voluntarily and intentionally waive my rights, and I am willing to make a statement and to answer questions.

(October 21, 2003 Waiver of Right to Remain Silent and of Right to Advice of Counsel at 1.) In the interview, defendant admitted buying six or seven firearms through a female straw purchaser, and admitted that several of the straw purchased guns were stored at his residence.[1] (Gov't Mot. at 3–4; Jan. 29, 2007 Hearing Transcript at 104.) The statement given by defendant to Agent Gallagher is not challenged in the two suppression motions.

Based on defendant's admissions that he had been involved in the purchase and possession of firearms, defendant's admission that he had traveled outside of Phila-

delphia, and Agent Gallagher's interview of McQuay, state parole agents decided to conduct a search of defendant's residence. (Gov't Mot. at 4; Jan. 29, 2007 Hearing Transcript at 61.) ATF agents accompanied the state parole agents to the house for safety purposes, but the state parole agents conducted the search. (Jan. 29, 2007 Hearing Transcript at 62, 106.) According to the uncontroverted testimony of Agent Gallagher, defendant's mother—the owner of defendant's residence—consented to the search. (*Id.* at 106.)

The state parole agents seized the following evidence and contraband from defendant's residence:

1. Glock 9mm semi-automatic pistol; PSP Application/Record of Sale dated 10/8/03 for Glock 9mm semi-automatic pistol; and a box for a Glock 9mm semi-automatic pistol;

2. Franchi 12–Gauge shotgun;

3. Marlin 30/30 rifle;

4. Romania AK–47 SAR–1 Assault Rifle;

5. Bushmaster .223 caliber rifle;

6. White bullet proof vest;

7. .223 caliber magazines and two high-capacity magazines;

8. Assorted ammunition;

9. Various nylon holsters and magazine pouches;

10. One rifle stock;

11. Bolt cutters and a screwdriver;

12. Six targets shot with various calibers of ammunition;

13. Probation conditions for defendant;

---

1. According to Agent Gallagher, defendant first stated that he was merely storing the guns at his residence for another individual, but later stated that he had been to the gun store and that a female bought the guns for defendant and another individual. (Jan. 29, 2007 Hearing Transcript at 104.)

14. Red bag containing clothing, including jeans with pink dye, and one 9 mm round of ammunition;

15. Black Pistol magazine;

16. Gun cleaning kit;

17. Green fatigue/camouflage outfit, two Halloween masks, black leather gloves, black hat, black garb, and black leather boots;

18. Photos of Andre Henry, co-defendant Richard Holland, and others, holding firearms and money;

19. $14,308.97 in U.S. currency stained with pink dye and wrapped in moth balls and plastic bags; and

20. $189.00 in U.S. paper currency taken from defendant's person.

(Gov't Mot. at 4–5; Jan. 29, 2007 Hearing Transcript at 64–70; *see* Def. Supp. Mem. at 5.)

Defendant was taken into custody by state parole agents and charged with violating the conditions of his parole. (Gov't Mot. at 5.)

## III. PROCEDURAL HISTORY

On November 7, 2006, the Court held a suppression hearing to address whether defendant consented as a condition of parole to the warrantless search of his person, property, and residence by state parole agents. (Nov. 7, 2006 Hearing Transcript at 58.) During this hearing, the Court heard arguments on whether the Supreme Court's recent opinion in *Samson v. California*, —— U.S. ——, ——, 126 S.Ct. 2193, 2202, 165 L.Ed.2d 250 (2006) eliminated the requirement of reasonable suspicion where a parolee so consents. (*Id.* at 67–69.)

The Court decided to hold a second suppression hearing on January 29, 2007 to address whether there was reasonable suspicion to conduct the searches in question. During this hearing, defendant took the witness stand to testify in support of his position that the government lacked reasonable suspicion to conduct the searches. On cross-examination, defendant invoked his Fifth Amendment privilege against self-incrimination. (Jan. 29, 2007 Hearing Transcript at 149–151.) As a result of the invocation of the Fifth Amendment, the Court struck defendant's testimony. (*Id.* at 140, 151.)

## IV. LEGAL STANDARD

The Third Circuit concluded in *U.S. v. Baker*, 221 F.3d 438, 440 (3d Cir.2000) that "as a matter of Pennsylvania law the standard consent to search form implies a requirement that parole officers have reasonable suspicion in order to conduct a search of a parolee...." *See also U.S. v. Tirado*, 133 Fed.Appx. 13, 15 (3d Cir.2005). More precisely, the Third Circuit predicted "that the Supreme Court of Pennsylvania would so construe it...." *Baker*, 221 F.3d at 440. The consent provision in *Baker* was identical to the consent provision at issue in this case. *Compare id. with* Pa. Board of Probation and Parol Form PBPP–11, Parole No. 575B–S. In determining the "implicit requirement" of reasonable suspicion, the Third Circuit noted the "Pennsylvania Supreme Court's consistent application of the Fourth Amendment reasonableness inquiry to the consent form...." *Baker*, 221 F.3d at 448, 449 (citing *Commonwealth v. Williams*, 547 Pa. 577, 692 A.2d 1031 (1997); *Scott v. Pennsylvania Board of Probation & Parole*, 548 Pa. 418, 698 A.2d 32 (1997), *rev'd on other grounds*, 524 U.S. 357, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998)).

As the Third Circuit has explained, to ascertain whether "reasonable suspicion" exists to justify a search of a parolee, courts must consider "the totality of the circumstances to determine whether the 'officer has a particularized and objective basis for suspecting legal wrongdoing.' "

*U.S. v. Williams,* 417 F.3d 373, 376 (3d Cir.2005) (quoting *United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (internal quotations omitted)). "When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable." *United States v. Knights,* 534 U.S. 112, 121, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) (noting that the reasonable-suspicion standard is less demanding than the probable-cause standard). Indeed, where a parole officer has discovered a parole violation and reasonably believes that a parolee may have committed further violations, parole officers are "duty-bound" to investigate. *See United States v. Hill,* 967 F.2d 902 (3d Cir.1992). The reasonable suspicion standard "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.'" *Arvizu,* 534 U.S. at 273, 122 S.Ct. 744 (quoting *United States v. Cortez,* 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)).

In *Samson v. California,* —— U.S. ——, ——, 126 S.Ct. 2193, 2202, 165 L.Ed.2d 250 (2006), however, the Supreme Court recently "conclude[d] that the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee." In that case, the Supreme Court granted certiorari to answer "whether a condition of release can so diminish or eliminate a released prisoner's reasonable expectation of privacy that a suspicionless search by a law enforcement officer would not offend the Fourth Amendment." *Id.* at 2196 (citations omitted). In *Samson,* a "California law provide[d] that every prisoner eligible for release on state parole 'shall agree in writing to be subject to search or seizure by a parole officer or other peace officer at any time of the day or night, with or without a search warrant and with or without cause.'" *Id.* at 2196 (citing Cal.Penal Code Ann. § 3067(a)). The "plain terms of the parole search condition" were a crucial factor in the Supreme Court's determination that the parolee "did not have an expectation of privacy that society would recognize as legitimate." *Id.* at 2199.

Several courts have interpreted *Samson* "to say that the Fourth Amendment does not *require* individualized suspicion" but that "*Samson* does not preclude other States from requiring some form of individualized suspicion." *United States v. Perkins,* 2006 WL 3718048, at *2–4 (S.D.Ill.Dec.15, 2006) (emphasis in original) (citing *Samson,* 126 S.Ct. at 2201); *see also In re J.E.,* 907 A.2d 1114, 1120–21 (Pa.Super.2006) (citing *Samson* 126 S.Ct. at 2201) (noting *Samson* "in fact recognizes that some States and the Federal Government require a level of individualized suspicion in their supervisory system"); *United States v. Becker,* 2007 WL 81960, at *7 (N.D.Iowa Jan. 9, 2007)

## V. DISCUSSION

In its original response to defendant's motions, the government argues: (1) under *Samson,* reasonable suspicion was not required to conduct the searches of defendant's person, vehicle, and property; and (2) in the alternative, the searches were based on reasonable suspicion. (Gov't at 5.) In defendant's counseled supplemental memorandum of law, defendant argues: (1) *Samson* "does not jettison the reasonable suspicion requirement under Pennsylvania law[;]" and (2) the searches were not based on reasonable suspicion. (Def. Supp. Mem. at 3.) The government's amended response focuses entirely on its argument that the searches were based on

reasonable suspicion. (Govt. Am. Resp. at 5–6.)

Although *Samson*, 126 S.Ct. at 2199 may be dispositive in this case, the Court need not and does not base its ruling on this issue because the parole officers had reasonable suspicion to conduct the searches in question. Accordingly, the Court holds that the items of evidence at issue in defendant's motions were lawfully seized and are admissible at trial. Notwithstanding the presence of reasonable suspicion, the Court briefly addresses the issues presented by *Samson*, 126 S.Ct. at 2199.

## A. The Interaction Between *Samson* and *Baker*

In *Samson*, the Supreme Court construed a state statute that required parolees to consent to a search "with or without a search warrant and with or without cause." —— U.S. ——, 126 S.Ct. 2193, 165 L.Ed.2d 250 (citing Cal.Penal Code Ann. § 3067(a)). In contrast, the Pennsylvania provision at issue in this case merely states that a search of a parolee can be conducted "with or without a warrant," and contains no language regarding suspicion or cause.[2] According to defendant, "since the language of the Pennsylvania form and the state courts' construction of that form is different from California, *Samson* does not control this case." (Def. Supp. Mem. at 4.) The Supreme Court's treatment of the "plain terms of the parole search condition" in *Samson* lends support for defendant's interpretation. *Samson*, 126 S.Ct. at 2199.

On the other hand, *Samson* expands upon a line of cases in which "the United States Supreme Court has held that parolees enjoy a significantly diminished expectation of privacy, due to the salient governmental interest in monitoring parolees." *Perkins*, 2006 WL 3718048, at *2

(citing *Samson*, 126 S.Ct. at 2196; *Knights*, 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497; *Griffin v. Wisconsin*, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987)). Indeed, *Samson* directly states "that the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee." *Samson*, 126 S.Ct. at 2202. The Pennsylvania state court cases cited in *Baker* rested upon application of Fourth Amendment reasonableness inquiry to the Pennsylvania consent provision. Hence, *Baker's* finding of an implicit reasonable suspicion requirement might be interpreted as a demand of the Fourth Amendment that is obviated by *Samson*, rather than as a form of individualized suspicion required under Pennsylvania law. Accordingly, "[d]efendant's undisputed parole status, in conjunction with the search condition of his parole, may very well be dispositive here." *United States v. Stuckey*, 2006 WL 2390268, at *3 (S.D.N.Y. Aug.16, 2006) (noting that *Samson*, 126 S.Ct. at 2197–2202 might be dispositive, but finding that "the parole officer's home-visit clearly was 'reasonably related' to the performance of his duties").

The Court refrains from ruling on this issue, and instead will address the question of whether there was reasonable suspicion to conduct the searches in question. Several other courts have taken this approach. *Perkins*, 2006 WL 3718048, at *2 ("Ultimately, the Court need not decide whether reasonable suspicion is still required to conduct a search of a parolee's residence [after *Samson*] because the Court finds that the search was, in fact, supported by reasonable suspicion."); *Becker*, 2007 WL 81960, at *7 (N.D.Iowa Jan. 9, 2007) ("[T]he Iowa Supreme Court has not addressed the *Samson* decision to date nor

---

**2.** The Court notes that, by Pennsylvania statute, parole agents may conduct searches of parolees if there is reasonable suspicion to do so. 61 Pa. Cons.Stat. § 331.27a.

discussed whether Iowa common law requires a level of individualized suspicion. Therefore, the court will address whether the search satisfied the terms of Becker's probation agreement, which required the search to be supported by reasonable suspicion."); *see United States v. Massey,* 461 F.3d 177, 179 (2nd Cir.2006) (noting reasonable suspicion existed "to conduct a further search for additional contraband, assuming *arguendo* that reasonable suspicion was even needed [after *Samson* ] when [defendant] had already consented to such a search as a condition of obtaining parole").

## B. Reasonable Suspicion

### 1. *Search of Defendant's Person and Vehicle*

State parole agents had reasonable suspicion to search defendant's person and vehicle based on: (1) information from Agent Gallagher that McQuay had straw purchased guns for defendant; and (2) defendant's admission that he traveled outside of Philadelphia. Donna Henry's knowledge of defendant's previous armed robbery conviction bolstered the state parole agents' reasonable suspicion.[3]

■ Defendant argues that the information provided by Agent Gallagher was "stale" because: (1) Agent Gallagher waited nearly two weeks after interviewing McQuay to relate the information to the state parole office; and (2) the information revealed in the interview with McQuay related to the straw purchase of weapons in August 2003. (Def. Supp. Mem. at 4–5.) The Court disagrees. "The likelihood that the evidence sought is still in place depends on a number of variables, such as the nature of the crime, of the criminal, of

the thing to be seized, and of the place to be searched." *United States v. Tehfe,* 722 F.2d 1114, 1119 (3d Cir.1983); *see also United States v. Harvey,* 2 F.3d 1318 (3d Cir.1993) (13 to 15 month old evidence in a child pornography case was not stale where an agent stated that pedophiles rarely, if ever, dispose of sexually explicit materials); *United States v. Bond,* 106 F.3d 409, 1996 WL 744356, at *2 (9th Cir.1996) (noting that four month old evidence was not too stale to provide probable cause to search a car belonging to a robber where an agent testified that robbers typically leave weapons and ammunition in their cars).

■ In this case, Donna Henry testified that the information provided by Agent Gallagher led her to believe that both the McQuay interview and the straw purchases were recent. (Jan. 29, 2007 Hearing Transcript at 73.) Agent Gallagher confirmed that he conveyed to Donna Henry that both the McQuay interview and the straw purchases were recent. (*Id.* at 100.) Furthermore, Agent Gallagher testified that, in his experience as an ATF agent, weapons are frequently "recovered two weeks after receiving information about the location of those weapons[.]" (*Id.* at 114.) According to Agent Gallagher, "[l]ong guns especially tend to be around much longer than a handgun would in most circumstances," and that these guns are often recoverable two or more months after receiving information about their location. (*Id.*)

### 2. *Search of Defendant's Residence*

■ On the basis of the information provided by Agent Gallagher, state parole

---

**3.** Donna Henry testified that she knew that defendant had been convicted of "[t]wo counts of robbery at point of gun" and that, given her "18 years experience with the Pennsylvania Board of Probation and Parole," the

prior weapons offenses factored into her decision to detain defendant and search his residence. (Jan. 29, 2007 Hearing Transcript at 89–91.)

agents also had reasonable suspicion to search defendant's residence. More importantly, reasonable suspicion existed on the basis of defendant's admission to Agent Gallagher that he had stored the straw purchased guns in his residence. Defendant's statement to Agent Gallagher was not the product of an unconstitutional search of defendant's car (the Court has concluded that the search was supported by reasonable suspicion), nor were defendant's *Miranda* rights violated (Agent Gallagher advised defendant of his *Miranda* rights and defendant signed a waiver form).

To the extent that defendant argues that the state parole officers did not have reasonable suspicion to search the entirety of the house in which defendant resided, the Court rejects this argument. *See United States v. Albert,* 2006 WL 2078564, at *3 (N.D.Cal. July 24, 2006) (holding that "an officer's subjective intent does not invalidate the search of premises jointly occupied by a defendant and someone who is subject to a search condition, if the search is objectively justifiable to monitor the person with the search condition or to serve some other law enforcement purpose").

The Court also rejects defendant's argument that the clothing, currency, bolt cutters, screwdriver, and red bag should be suppressed because they did not constitute violations of defendant's parole. The red bag contained both clothing and a round of ammunition. (Jan. 29, 2007 Hearing Transcript at 66.) Much of the currency was stained with dye, evincing that it was involved in a bank robbery. (*See Id.* at 94.) Finally, although some of this evidence may not have independently constituted violations of defendant's parole, the items collectively formed a strong basis to infer a violation.

### 3. *Defendant's Testimony*

During the January 29, 2007 Suppression Hearing, defendant took the witness stand to testify in support of his position that the government lacked reasonable suspicion to conduct the searches in question. During cross-examination, the government asked whether defendant had told Agent Gallagher that a female had purchased weapons for him. (Jan. 29, 2007 Hearing Transcript at 148.) The Court concludes that this question was central to the issue of whether the state parole officers had reasonable suspicion to search defendant's residence. After conferring with defense counsel, defendant decided to invoke his Fifth Amendment privilege against self-incrimination. (*Id.* at 149–151.) The Court advised defendant that, as a result of invoking the Fifth Amendment, both the direct examination and cross examination of defendant would be stricken. (*Id.* at 140, 151.)

 Striking both the direct examination and cross examination was appropriate in this case. "[A] trial court must safeguard to the extent possible a criminal defendant's right to present her story to the jury." *Denham v. Deeds,* 954 F.2d 1501, 1503–1504 (9th Cir.1992) (noting that, under the due process clause and the compulsory process clause, a defendant has a right to present witnesses) (citing *Chambers v. Mississippi,* 410 U.S. 284, 294, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *Taylor v. Illinois,* 484 U.S. 400, 409, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988)). "Where a defense witness refuses to answer questions that go to the heart of the direct testimony on a central issue, however, the truth-seeking function of the court is impaired." *Id.* Accordingly, it is appropriate to exclude "a defense witness's testimony when the witness has refused on cross-examination to respond to questions on non-collateral matters." *Id.* (citing *United States v. Espar-*

*sen,* 930 F.2d 1461, 1469–70 (10th Cir. 1991); *United States v. Doddington,* 822 F.2d 818, 822 (8th Cir.1987); *United States v. Frank,* 520 F.2d 1287, 1292 (2d Cir. 1975)); *Hussey v. Chase Manhattan Bank,* 2005 WL 1787571, at *5 (E.D.Pa. July 27, 2005) (citing *Denham,* 954 F.2d at 1503); *see also Byrne v. Calastro,* 205 Fed.Appx. 10, 2006 WL 3208283, at *2 (3d Cir.2006) (basing "its rulings on the undisputed facts presented by" plaintiffs where defendants raised "issue[s] of their Fifth Amendment privileges against self-incrimination [resulting] in their version of the facts being stricken from the record before the Court").

## C. Consent

Independent of the presence of reasonable suspicion, the Court notes that there is uncontroverted testimony that defendant consented to the search of his vehicle immediately prior to the October 21, 2003 search of his vehicle, and that defendant's mother consented to the search of her house immediately prior to the October 21, 2003 search of defendant's residence. (Jan. 29, 2007 Hearing Transcript at 55, 106.) The valid consents of defendant and his mother, without more, would be sufficient for the Court to determine that defendant's Fourth Amendment right to be free from unreasonable searches and seizures was not violated. *See Only v. Cyr,* 205 Fed.Appx. 947, 2006 WL 3167799, at *2 (3d Cir.2006); *United States v. Chatterpaul,* 200 Fed.Appx. 147, 2006 WL 2844267, *3 (3d Cir.2006).

## VI. CONCLUSION

For the foregoing reasons, the Court holds that the searches in question were based on reasonable suspicion, and that defendant's Fourth Amendment right to be free from unreasonable searches and seizures was not violated. Thus, defendant's suppression motions are denied.

An appropriate order follows.

## *ORDER*

**AND NOW,** this 2nd day of February, 2007, upon consideration of defendant Andre Henry's Motion for Suppression of Any and All [Evidence] Seized From the Defendant's Residence Including But [Not] Limited to his Vehicle (Document No. 182, filed October 16, 2006); defendant Andre Henry's *pro se* Motion for Suppression of Statements and Any and All Evidence Illegally Seized From The Defendant's Person, Residence Including His Vehicle (Document No. 253, filed November 20, 2006); the Government's Response in Opposition to Defendant's Motion to Suppress the Evidence Seized (Document No. 194, filed October 23, 2006); the Government's Response in Opposition to Defendant's Pro-se Motion to Suppress Statements and Evidence Seized From his Person Vehicle and Residence (Doc. 311, filed December 29, 2006); Defendant's Supplemental Memorandum in Support of Motion to Suppress Evidence (Document 342, filed January 26, 2007); and Andre Henry's *pro se* Supplemental Memorandum of Law for Suppression of Evidence Seized From the Defendants Person, Vehicle, and Residence (Doc. No. 351, filed January 30, 2007), following suppression hearings on November 7, 2006 and January 29, 2007, for the reasons set forth in the attached Memorandum, **IT IS ORDERED THAT** Andre Henry's Motion for Suppression of Any and All [Evidence] Seized From the Defendant's Residence Including But [Not] Limited to his Vehicle (Document No. 182) and defendant Andre Henry's *pro se* Motion for Suppression of Statements and Any and All Evidence Illegally Seized From The Defendant's Person, Residence Including His Vehicle (Document No. 253) are **DENIED.**